**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

FLOYD MORRIS,

       Plaintiff,                                          Case No.
                                                             Hon.

v.

MUNSON MEDICAL CENTER,

       Defendant.

_____

David A. Nacht (P47034)
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
Telephone: (734) 663-7550
dnacht@nachtlaw.com

_____

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Floyd Morris, through his attorneys, NACHTLAW, P.C., hereby brings this complaint against Defendant Munson Medical Center, as follows:

**INTRODUCTION**

1.     This case arises out of the inexplicable refusal of Defendant Munson Medical Center (hereinafter, "Defendant") to provide Plaintiff Floyd Morris (hereinafter, "Plaintiff" or "Mr. Morris") with necessary accommodations during an in-patient stay in February of 2022.

2.     Plaintiff is paraplegic. He was paralyzed from the waist down after an accident in his teenage years. Despite his disability, Plaintiff is fiercely independent and does his best to live a normal life.

3.     Plaintiff uses a wheelchair to get around, has a successful career in civil

1

engineering, supports his wife and children, and takes care of himself.

4.      Despite his determination, Plaintiff still faces occasional challenges to his ability to access the same services as able-bodied people. The reality is that there are some places that Plaintiff, using his wheelchair, is simply not able to go.

5.      A hospital should not be one of these places – but unfortunately, Defendant placed itself into this category when it refused to put Plaintiff into a room with adequate facilities, forcing him to go days without access to a proper bed or bathroom.

6.      Plaintiff now brings this suit in the hopes that when he, or the next person with a disability, needs medical help from Munson, they will be provided with proper accommodations as required by law.

## PARTIES, JURISDICTION, AND VENUE

7.      Plaintiff, Floyd Morris, is an individual residing in Lake City, Michigan.

8.      Defendant, Munson Medical Center, is a domestic nonprofit corporation that conducts business and has its principal place of business in Traverse City, Michigan, within the Western District of Michigan.

9.      This Court has federal question jurisdiction pursuant to the Americans with Disabilities Act and 28 U.S.C. 1331.

10.     Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise out of the same case and controversy.

11.     Venue in this Court is proper pursuant to 28 U.S.C. 1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Traverse City, Grand Traverse County, Michigan, within this judicial district.

## GENERAL ALLEGATIONS

**Plaintiff's Disability**

12.     Plaintiff, Floyd Morris, is a 48-year-old man residing in Lake City, Michigan.

13.     When Plaintiff was 14, he survived a serious car accident that left him paralyzed from the waist down.

14.     Plaintiff uses a wheelchair to get around.

15.     Despite his paraplegia, Plaintiff has, for the past 34 years, been determined to live as independently as possible.

16.     Plaintiff works full-time and in-person at Prein & Newhof, Inc., a civil engineering firm in Cadillac, Michigan; maneuvers his wheelchair by himself; and takes care of himself with as little help as possible, including caring for his own personal hygiene needs independently.

**Munson Medical Center**

17.     Munson Medical Center, located in Traverse City, Michigan, is the largest hospital under the 'Munson Healthcare' umbrella.

18.     Munson Healthcare is the largest healthcare provider in Northern Michigan, operating nine hospitals in the region.

19.     The Munson Medical Center was originally built in 1925 and has been expanded and renovated numerous times since.

20.     In 2007, Munson expanded its Emergency Department, adding another 39,000 square feet and 43 new patient rooms.

**Munson Medical Center's Failure to Accommodate Plaintiff's Disability**

21.     On February 16, 2022, at approximately 2:20 P.M., Plaintiff was admitted to Munson Medical Center's Emergency Department with a swollen, painful, and fractured jaw caused by a previous wisdom tooth removal surgery and subsequent infection.

3

22.     Upon Plaintiff's admission to Munson Medical Center, Plaintiff and his wife, Kaci, brought up the fact that Plaintiff would need a room with enough space for his wheelchair to maneuver around, a wheelchair-accessible bathroom, and a special bed that would prevent Plaintiff from developing pressure sores and ulcers if he remained still too long.

23.     The bed was not merely a request for comfort, but a medical necessity: Plaintiff had previously had to have a serious plastic surgery due to the severity of the pressure sores and ulcers he had suffered.

24.     Munson Medical Center did not provide these accommodations.

25.     Instead, after Plaintiff waited in the Emergency Room until approximately 10:00p.m., Munson Medical Center staff placed Plaintiff in a shared room with a regular bed that did not have adequate space for Plaintiff's wheelchair to get into the bathroom.

26.     Munson staff said there was "nothing they could do" about the bed and that the regular bed would be "sufficient."

27.     The next morning, February 17, 2022, Munson staff moved Plaintiff to a private room, but still did not provide an adequate bed.

28.     The second room also did not have a bathroom with space for Plaintiff's wheelchair, a lowered mirror or sink that would allow Plaintiff to use them from his wheelchair, or an accessible shower he could transfer into.

29.     After two days in the hospital, Plaintiff developed a pressure sore on his backside.

30.     Mr. and Mrs. Morris informed Munson staff that the pressure sore needed medical attention and that Plaintiff needed the appropriate bed.

31.     Munson staff provided varying excuses for their inability to provide the appropriate bed, including that they "had to wait for a doctor's order" and that there was an "insurance issue."

4

32.     Mr. and Mrs. Morris had specifically requested the appropriate bed as soon as they arrived at the hospital two days prior.

33.     Meanwhile, Mrs. Morris treated the pressure sore herself.

34.     Despite the clear and immediate need, Munson staff did not put in the order for the special bed until that evening, and it did not arrive until the next day, February 18, 2022.

35.     By that time, the pressure sore had developed into a blister requiring additional medical treatment.

36.     When the bed was finally delivered, the individual delivering it stated that he did not know why the hospital had failed to immediately give Plaintiff the right bed, because there were 4 such beds available in the hospital that he could have been given immediately.

37.     Meanwhile, Plaintiff still could not use the bathroom in his hospital room because it was not ADA-compliant.

38.     The bathroom lacked adequate space for Plaintiff's wheelchair to enter or move around, and the mirror and sink were too high for Plaintiff to use from his wheelchair. There was no way he could possibly get into the shower and no way to transfer onto a toilet.

39.     When Plaintiff asked for a handheld mirror, Munson staff said they could not provide one.

40.     Munson staff claimed that the floor Plaintiff was on had no ADA-compliant bathrooms that would fit his wheelchair, but mentioned that other, newer floors of the hospital did.

41.     Munson staff provided no reason why Plaintiff could not have been placed onto a floor or into a room with an ADA-compliant bathroom.

42.     When Munson staff brought him a commode to use, it was completely unsafe and unusable, with no way to lock the wheels in place to allow Plaintiff to transfer himself onto it.

43.     As a result, Plaintiff had to ask his wife to bring a commode from home so that he could relieve himself.

44.     Because the doors of Plaintiff's hospital room do not lock, Mrs. Morris had to stand by the hospital room door every time Plaintiff had to use the commode.

45.     Mrs. Morris had to take time off work so that she could be present full-time with Plaintiff at the hospital because Munson Medical Center failed to meet his needs.

46.     Plaintiff was unable to shave until Mrs. Morris brought a handheld mirror from home for him to use.

47.     Plaintiff was unable to take a shower for the entire duration of his hospital stay.

48.     Being unable to take a shower and having to perform bodily functions in his hospital room with his wife standing outside the door for five days because of Munson Medical Center's failure to provide an ADA-compliant hospital room caused the fiercely independent Plaintiff to suffer humiliation, embarrassment, frustration, and anger.

49.     When Mr. and Mrs. Morris attempted to make a complaint about the lack of proper accommodations, they were met with a stubborn refusal to acknowledge the issues.

50.     Munson's "Patient Liaison Officer" told Mr. and Mrs. Morris she would bring the issues up to make sure it didn't happen again. When Mrs. Morris asked if she knew what the bathroom looked like and therefore what needed to be addressed, the liaison officer admitted she did not.

51.     The liaison officer later claimed that Plaintiff had been offered an ADA-compliant bathroom, but the bathroom she referred to was located down the hall from Plaintiff's room and contained only a shower and no toilet.

52.     Plaintiff was discharged from the hospital on or about February 21, 2022.

6

**Previous Issues at Munson Medical Center Hospitals**

53.     Adding insult to injury, Plaintiff had experienced similar access issues twice before at Munson Medical Center hospitals.

54.     In 2005, Plaintiff was admitted to Munson Medical Center's Cadillac hospital for an infection in his leg.

55.     Munson failed to provide Plaintiff with a wheelchair-accessible room or bathroom; his wheelchair physically could not fit through the bathroom door in his room.

56.     Then, too, Plaintiff had been forced to bring his commode from home so that he could use the bathroom and had to leave his room and enter another room located down the hall in order to take a shower.

57.     In 2014, Plaintiff was again admitted to Cadillac for a bad pressure sore.

58.     Munson again failed to provide Plaintiff with a wheelchair-accessible room or bathroom.

59.     Again, Plaintiff was forced to bring his commode from home so that he could use the bathroom and had to leave his room and enter another room located down the hall in order to take a shower.

60.     After these incidents, Kaci Morris attempted to raise awareness about the issue and advocate for people with disabilities, in an effort to ensure that no one would be denied their needed accommodations at a Munson hospital again.

61.     At this point, Mrs. Morris was told they would be having meetings and plans to make a room accessible.

62.     Unfortunately, her efforts were in vain, as Plaintiff's third experience with Munson Medical Center made clear.

63.     After Plaintiff's third experience with Munson Medical Center's failure to accommodate his disability in 2022, it has become clear to him that he cannot receive adequate care at Munson; however, if he is injured or becomes ill, he has little choice in the matter but to seek help from a Munson hospital, as they are the largest healthcare provider in Northern Michigan.

**COUNT I**
Disability Discrimination in Violation of the Americans with Disabilities Act
42 U.S.C 12182

64.     Plaintiff incorporates the preceding paragraphs as if fully restated herein.

65.     Title III of the Americans with Disabilities Act prohibits discrimination against disabled individuals in public accommodations.

66.     Title III of the ADA defines "discrimination" to include a "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations…" 42 U.S.C. 12182(b)(2)(A)(iii).

67.     Title III of the ADA also defines "discrimination" to include "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities… where such removal is readily achievable." 42 U.S.C. 12182(b)(2)(A)(iv).

68.     Title III of the ADA also prohibits places of public accommodation from denying disabled individuals "the opportunity… to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. 12182(b)(1)(A)(i).

69.     The U.S. Department of Justice promulgates regulations requiring places of public accommodation to comply with Title III of the ADA and produces Standards for Accessible Design that such facilities must comply with. *See* 28 C.F.R. 36 *et seq.*

70.     28 C.F.R. 36.401(a)(1) provides that "discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993 that are readily accessible to and usable by individuals with disabilities."

71.     28 C.F.R. 36.402(a)(1) requires that "[a]ny alteration made to a place of public accommodation or a commercial facility after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."

72.     28 C.F.R. 36.406(a)(1) provides that "[n]ew construction and alterations subject to Sections 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010."

73.     Because Munson Medical Center's Emergency Department was constructed or altered prior to September 15, 2010, Defendant's facilities were required to comply with the Department of Justice's 1991 ADA Standards for Accessible Design.

74.     The 1991 ADA Standards for Accessible Design require medical care facilities to provide accessible patient rooms that meet specific minimum requirements. These include

providing wheelchair-accessible bathrooms with fixtures such as mirrors, counters, grab bars, handrails, and shower seats.

75.     Defendant's failure to provide Plaintiff with a wheelchair-accessible room and bathroom violated these federal regulations.

76.     At all relevant times, Defendant was a place of public accommodation covered by the Americans with Disabilities Act, 42 U.S.C 12181(7)(f).

77.     Plaintiff is a "qualified individual with a disability" as defined by 42 U.S.C. 12102(1) due to his status as a paraplegic, which substantially limits his major life activities including but not limited to walking, standing, and bathing.

78.     Defendant discriminated against Plaintiff by failing to make a requested reasonable modification that was necessary to accommodate Plaintiff's disability.

79.     Plaintiff's requested modification would not have altered the fundamental nature of Defendant's business.

80.     Defendant's failure to accommodate Plaintiff's disability was in clear violation of applicable federal regulations and guidelines.

81.     Defendant's actions in violation of the ADA were willful.

82.     Defendant's failure to provide reasonable accommodations for Plaintiff during his stay at Munson Medical Center were motivated by Plaintiff's disability.

**COUNT II**
Disability Discrimination in Violation of the Persons with Disabilities Civil Rights Act
M.C.L. 37.1101 *et seq.*

83.     Plaintiff incorporates the preceding paragraphs as if fully restated herein.

84.     Defendant is a place of public accommodation as defined by the Persons with Disabilities Civil Rights Act, 37.1301.

85.     Plaintiff had a disability within the meaning of M.C.L. 37.1103(d) due to his status as a paraplegic, which substantially limits his major life activities including but not limited to walking, standing, and bathing.

86.     M.C.L. 37.1302 prohibits such places of public accommodation from "deny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids."

87.     The PWDCRA "substantially mirrors the ADA." *Donald v. Sybra, Inc*., 667 F.3d 757, 764 (6th Cir. 2012).

88.     Defendant's failure to provide Plaintiff with required accommodations for his disability, including an appropriate bed and an accessible room and bathroom, denied Plaintiff the full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations of the hospital.

89.     Defendant's actions in violation of the PWDCRA were willful.

90.     Defendant's failure to provide reasonable accommodations for Plaintiff during his stay at Munson Medical Center were motivated by Plaintiff's disability.

**COUNT III**
Disability Discrimination in Violation of Section 504 of the Rehabilitation Act
29 U.S.C § 794

91.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

92.     Section 504 of the Rehabilitation Act of 1973, 29 USC § 701 et seq. ("Section 504"), in relevant part, prohibits discrimination against people with disabilities in "programs and activities" that receive federal funding.

93.     Munson Medical Center is a program or entity covered by Section 504, 29 USC § 794(b)(3)(A)(ii).

94.     Plaintiff is a person with a disability as defined by Section 504, 29 USC § 705, sections (9) and (20).

95.     Defendants discriminated against Plaintiff because of his disabilities by the conduct described herein including, but not limited to, imposing overly burdensome conditions on his readmission to the University, expelling him from the University, and banishing him from campus, in violation of Section 504, 29 USC § 794.

## DAMAGES

96.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered monetary damages, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will so suffer in the future.

## RELIEF REQUESTED

Plaintiff Floyd Morris prays that this Honorable Court grant the following relief:

- Declare that the aforementioned practices and actions of Defendant constitute disability discrimination in violation of the Americans with Disabilities Act, Persons with Disabilities Civil Rights Act, and Rehabilitation Act;

- Award Plaintiff compensatory damages;

- Award Plaintiff exemplary damages;

- Award Plaintiff reasonable attorney's fees, costs, and interest; and

- Award such other relief as this Court may deem just and proper.

Wherefore, Plaintiff Floyd Morris respectfully requests that this court enter judgment against Defendant and all relief requested in this Complaint.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (P47034)
**NACHTLAW, P.C**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com

Dated: August 27, 2024

## **DEMAND FOR JURY TRIAL**

Now comes Plaintiff Floyd Morris, by and though his attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above captioned matter.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (P47034)
**NACHTLAW, P.C.**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: August 27, 2024